IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JILLIAN RIGHTMYER** | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | NO. 23-1925 |
| **v.** | : | |
| | : | |
| **PHILLY PREGNANCY CENTER, P.C.,** *et al.* | : | |
| | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                  MARCH 1, 2024

## MEMORANDUM OPINION

**INTRODUCTION**

      This matter arises out of the allegations of Plaintiff Jillian Rightmyer ("Plaintiff") concerning the negligent medical care she allegedly received from her healthcare providers, Defendants Philly Pregnancy Center ("PPC"), Dr. Ozzie Geifman-Holtzman ("Dr. Geifman-Holtzman"), and Nurse Theresa Smigo ("Defendant Nurse Smigo") (collectively, "Defendants"), over the course of Plaintiff's prenatal care.[1] Plaintiff asserts state law claims for negligence, assault, battery, breach of contract, and negligent and intentional infliction of emotional distress, as well as federal claims for racial discrimination under 42 U.S.C. § 1981 and § 1557 of the Affordable Care Act, 42 U.S.C. § 18116.

      Presently, before this Court is Defendant Nurse Smigo's motion for partial dismissal in which she argues that Plaintiff has failed to allege facts sufficient to plausibly assert claims of breach of contract, violation of the Affordable Care Act, and intentional infliction of emotional

---

[1] Defendants PPC and Dr. Geifman-Holtzman jointly filed a motion to dismiss, which will be addressed separately from this Memorandum Opinion.

distress. (ECF 11). Plaintiff opposes the motion. (ECF 14). For the reasons set forth herein, Defendant Nurse Smigo's motion to partially dismiss is granted, *in part*, and denied, *in part*.

**BACKGROUND**

When considering a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Here, the salient facts alleged in Plaintiff's amended complaint are summarized as follows:

> Plaintiff is an African American, Muslim woman. Dr. Geifman-Holtzman is a Caucasian medical doctor and the owner of PPC. Defendant Nurse Smigo is a Caucasian nurse who works at PPC. At the time of her amended complaint, Plaintiff had been a patient of Defendants for years. In 2022, Plaintiff became pregnant and chose Defendants for her prenatal care. Throughout her pregnancy, Plaintiff noticed that she was rarely seen by an actual doctor but instead was seen by a nurse. Plaintiff also noticed that her prenatal care was "subpar," but she did not want to change medical providers in the middle of her pregnancy. (Am. Compl., ECF 9, at ¶ 16).
>
> In early October 2022, Plaintiff began experiencing extreme back pain. She made an appointment to see "Defendant in person" and conveyed her symptoms to "Defendant." (*Id.* at ¶¶ 18-19). After requesting a "note for work," Defendant Nurse Smigo went on a tirade, accused Plaintiff of lying about her pain, and called Plaintiff a "piece of shit." (*Id.* at ¶¶ 19, 21). Defendant Nurse Smigo also questioned Plaintiff's motives for getting pregnant and suggested that taking off from work would be fraud. Defendant Nurse Smigo then called the police.
>
> Sometime after this incident, Plaintiff went into early labor and delivered her baby. Plaintiff's baby had to stay at the hospital "longer than usual." (*Id.* at ¶ 33).

**LEGAL STANDARD**

When considering a Rule 12(b)(6) motion to dismiss, courts must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard

requires more than a "sheer possibility that a defendant has acted unlawfully." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [her] claims across the line from conceivable to plausible.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

**DISCUSSION**

As noted, Plaintiff asserts various state law claims and federal law racial discrimination claims premised on the "subpar" medical care she allegedly received from Defendants during her pregnancy. Defendant Nurse Smigo moves to dismiss Plaintiff's breach of contract, intentional infliction of emotional distress, and Affordable Care Act claims on the basis that Plaintiff has failed to allege facts sufficient to plausibly state those claims. Each claim is addressed below.

### *Breach of Contract (Count III)*

At Count III of the amended complaint, Plaintiff asserts a breach of contract claim against Defendants premised on allegations that Defendants failed to provide her proper medical treatment. Defendant Nurse Smigo moves to dismiss this claim on the basis that Plaintiff has failed to allege facts to meet any of the pleading requirements, including those particular to contract claims asserted against medical providers.

To state a claim for breach of contract under Pennsylvania law, a plaintiff must allege facts sufficient to plausibly show "(1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages." *Telwell v. Grandbridge*

3

*Real Estate Cap., LLC*, 143 A.3d 421, 427 (Pa. Super. Ct. 2016). In the context of a medical professional negligence action (like this case), a breach of contract claim against a medical provider is only recognized where the parties have contracted for a specific result. *Kershak v. Pa. Hosp.*, 1995 WL 50056, at *3 (E.D. Pa. Feb. 3, 1995) (citing *Murray v. Univ. of Pa. Hosp.*, 490 A.2d 839, 841 (Pa. Super. Ct. 1985)).

A careful review of Plaintiff's amended complaint reveals that it is devoid of any facts from which one could discern either the essential terms of a contract or a breach by Defendant Nurse Smigo of any contractual terms. Further, Plaintiff does not allege any facts that could plausibly show a contract for a specific result. Notably, in response to Defendant Nurse Smigo's arguments, Plaintiff merely refers to a statement purportedly released by the American Nurses Association and Pennsylvania Nurses Association to the effect that Defendant's conduct was "unethical, unprofessional, and unacceptable." (*See* Pl.'s Resp., ECF 14, at p. 6). It is well-settled, of course, that Plaintiff must allege facts, not conclusions, to support her claims. *See Iqbal*, 556 U.S. at 678. The public statement of the referenced nurses' associations contains only conclusions, not alleged facts pertinent to Plaintiff's allegations. As such, Plaintiff's reliance on this collection of conclusions is insufficient to meet her pleading burden. Accordingly, Defendant Nurse Smigo's motion to dismiss Count III is granted.

### *Racial Discrimination in Violation of the Affordable Care Act (Count V)*

At Count IV of the amended complaint, Plaintiff asserts claims for racial discrimination under § 1557 of the Affordable Care Act premised on her allegation that Defendants discriminated against her on the basis of her race when providing inadequate medical care. Defendant Nurse Smigo moves to dismiss this claim on the basis that, *inter alia*, an individual defendant, like herself, cannot be held liable under the applicable provisions of the Affordable Care Act.

4

Section 1557 of the ACA prohibits an individual from being "excluded from participation in, [] denied the benefits of, or [] subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116(a). In order to carry out the goal of the statute, § 1557 "expressly incorporates four federal civil rights statutes and includes the kind of rights-creating language found in those statutes." *Se. Pa. Transp. Auth. v. Gilead Scis., Inc.*, 102 F. Supp. 3d 688, 698 (E.D. Pa. 2015). Relevant here, of the four enforcement mechanisms incorporated under § 1557, only Title VI of the Civil Rights Act of 1964 ("Title VI") is applicable to a claim of racial discrimination — the only form of discrimination alleged in Plaintiff's amended complaint.

Title VI provides that: "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To state a claim under Title VI, "a plaintiff must allege that he or she (1) was a member of a protected class, (2) qualified for the benefit or program at issue, (3) suffered an adverse action, and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *David v. Neumann Univ.*, 177 F. Supp. 3d 920, 927 (E.D. Pa. 2016) (citations omitted).

Relying on multiple decisions by panels of the United States Court of Appeals for the Third Circuit, district courts in Pennsylvania have universally held that individuals may not be held liable under Title VI. *See Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517, 521 (3d Cir. 2011) ("Plaintiffs argue that they may recover from individual defendants under Title VI. This argument is contrary to law."); *Shannon v. Lardizzone*, 334 F. App'x 506, 508 (3d Cir. 2009) ("Courts have held that, because Title VI forbids discrimination only by recipients of federal funding, individuals

5

cannot be held liable under Title VI."); *Talbert v. Beal Bank USA*, 2023 WL 5153517, at *3 n.28 (E.D. Pa. Aug. 10, 2023) ("Only entities, not individuals, can be sued under Title VI."). This Court finds this reasoning persuasive and agrees with these courts' decisions. Accordingly, Defendant Nurse Smigo's motion to dismiss Plaintiff's Affordable Care Act claim (Count V) is granted.

### *Intentional Infliction of Emotional Distress (Count VII)*

At Count VII of the amended complaint, Plaintiff asserts a claim for intentional infliction of emotional distress against Defendant Nurse Smigo premised on Defendant Nurse Smigo's alleged conduct when responding to Plaintiff's request for a note to excuse her from work while she was suffering extreme pain. As described above, Plaintiff alleges that Defendant Nurse Smigo went on a tirade, accused Plaintiff of lying about her pain, and called Plaintiff a "piece of shit." (Am. Compl., ECF 9, at ¶¶ 19, 21). Defendant Nurse Smigo allegedly also questioned Plaintiff's motives for getting pregnant and suggested that taking off from work would be fraud. Defendant Nurse Smigo then called the police.

To sustain a claim for intentional infliction of emotional distress, Plaintiff must present evidence sufficient to show: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Miller v. Comcast*, 724 F. App'x 181, 182 (3d Cir. 2018) (quoting *Bruffett v. Warner Commc'ns, Inc.*, 692 F.2d 910, 914 (3d Cir. 1982)). Defendant Nurse Smigo moves to dismiss this claim on the basis that the facts alleged do not rise to the level of the requisite extreme and outrageous conduct. *See Kazatsky v. King David Mem'l Park*, 527 A.2d 988, 991 (Pa. 1987). However, when "reasonable persons may differ, it is for the jury to determine whether the conduct is sufficiently extreme and outrageous so as to result in liability." *Motheral v. Burkhart*, 583 A.2d 1180, 1188 (Pa. Super. Ct. 1990); *see also Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000)

("Whether the conduct of either defendant was sufficiently extreme and atrocious . . . is better answered at the summary judgment stage . . . ."). Considering the facts alleged and the context in which Defendant Nurse Smigo's allege conduct arose, *i.e.*, a medical provider setting, this Court cannot conclude at this stage that the alleged conduct was not extreme and outrageous as a matter of law. Accordingly, Defendant Nurse Smigo's motion to dismiss the intentional infliction of emotional distress claim is denied.

**CONCLUSION**

For the reasons set forth above, Defendant Nurse Smigo's motion to partially dismiss is granted with respect to Plaintiff's breach of contract (Count III) and Affordable Care Act (Count V) claims and denied with respect to Plaintiff's intentional infliction of emotional distress claim (Count VII). An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.